IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| CALVIN HENRY JOHNSON, *et al.*, )<br>    Plaintiffs, )<br>)<br>v. )<br>)<br>FIRST COMMUNITY BANK, *et al.*, )<br>    Defendants. )<br>_____) | Civil Action No. 3:14CV563 (REP-RCY) |

## REPORT AND RECOMMENDATION
### on
### Defendants' Motion for Judgment on the Pleadings

Plaintiffs Calvin Henry Johnson and Geraline Johnson (collectively "Plaintiffs") bring this suit against Defendants First Community Bank ("FCB") and Kepley Broscious & Biggs PLC ("KBB") (collectively "Defendants"), alleging violations of Virginia law, violations of federal securities laws, unjust enrichment, and breach of fiduciary duty. Plaintiffs own a commercial duplex in Henrico County, commonly known as 2696 Byron Street, Richmond, Virginia 23232 and 2698 Byron Street, Richmond, Virginia 23232 ("the Property"). In 2001, Plaintiffs obtained a loan ("the Loan") from CommonWealth Bank ("CWB"); in so doing, Plaintiffs executed the Promissory Note ("Note"), later modified by the Change in Terms Agreement ("CIT Agreement") and secured by the Deed of Trust ("DOT") on the Property, as modified by the Modification of Deed of Trust ("MDOT") (collectively "Loan Documents"). CWB later became FCB through a merger and subsequent conversion. KBB is the substitute trustee under the DOT.

In 2013, Plaintiffs defaulted on the Loan. Thereafter, FCB provided Plaintiffs with the opportunity to cure the default. Plaintiffs failed to cure, and KBB thereafter attempted to sell the property at foreclosure. Plaintiffs have since filed two bankruptcy actions, both automatically staying Defendants' attempts at foreclosure. Plaintiffs have also filed a Memorandum of *Lis Pendens* with the Circuit Court of Henrico County, Virginia, effectively frustrating foreclosure. In

July 2014, Plaintiffs instituted this lawsuit against Defendants in the same court (Complaint, ECF No. 1-1).

In August 2014, Defendants removed the suit to this Court, alleging jurisdiction under 28 U.S.C. § 1331, and filed an Answer (Answer, ECF No. 2) to Plaintiffs' Complaint.[1] Defendants now seek Judgment on the Pleadings under Federal Rule of Civil Procecure 12(c), arguing that the pleadings affirmatively demonstrate a complete lack of factual support for Plaintiffs' Complaint (Motion for Judgment on the Pleadings, ("Mot. J. Pleadings"), ECF No. 6).

This matter is now before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Defendants' Motion for Judgment on the Pleadings (ECF No. 6). For the reasons set forth below, the Court RECOMMENDS that Defendants' Motion for Judgment on the Pleadings (ECF No. 6) be GRANTED, that this action be DISMISSED with PREJUDICE, and that Plaintiffs be ORDERED to remove the Memorandum of *Lis Pendens* filed with the Henrico Circuit Court.

## I. BACKGROUND

The standard for a Rule 12(c) motion is identical to that of a Rule 12(b)(6) motion. *See Pro-Concepts, LLC v. Resh*, No. 2:12cv573, 2014 WL 549294, *4 (E.D. Va. Feb. 11, 2014). On a Rule 12(b)(6) motion, the record includes the complaint, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Further, in addition to those documents, "on a Rule 12(c) motion the Court 'may consider the Answer as well,' and the 'factual allegations in the Answer are taken as true to the extent they have not been denied or do not conflict with the Complaint." *Pro-Concepts*, 2014 WL 549294, at *5. Therefore, the Court finds the following to be part of the record

---

[1] Defendant FCB also filed a Counterclaim against Plaintiffs (ECF No. 3). The Court addresses the Counterclaim in a separate opinion. (Report and Recommendation on Counterclaim of First Community Bank, and Pls.' Mot. for Extension to File Pleadings *Nunc Pro Tunc*, ECF No. 29.)

2

on Defendants' Motion for Judgment on the Pleadings: The Complaint and its exhibits (ECF No. 1-1); the Answer and its exhibits (ECF Nos. 2, 2-1); the dockets of Plaintiffs' Bankruptcy Petitions (ECF No. 7-1); the *Lis Pendens* (Attach. D to this Report and Recommendation, ("Attach. D – *Lis Prendens*"), ECF No. 28-4);[2] and, the Exhibits Defendants presented at the January 7, 2015, hearing (Attachs. A, B, C to this Report and Recommendation, ECF Nos. 28-1, 28-2, 28-3)—the Note (Attach. A – Promissory Note, Defs.' Ex. A, ("Attach. A – Note"), ECF No. 28-1), the CIT Agreement (Attach. B – Change in Terms Agreement, Defs.' Ex. B, ("Attach. B – CIT Agreement"), ECF No. 28-2), and the DOT and MDOT (Attach. C – Deed of Trust and Modification of Deed of Trust, Defs.' Ex. C, ("Attach. C – DOT as Modified"), ECF No. 28-3).[3]

Construing the alleged facts in favor of Plaintiffs, the nonmoving parties, but also taking allegations in the Answer to be true—to the extent they have not been denied and are not in conflict with the Complaint, *see Pro-Concepts*, 2014 WL 549294, at *5—the Court makes the following findings of fact.

On December 15, 2001, Plaintiffs obtained the Loan from CWB and executed the Note in the principal amount of $72,250. (Attach. A – Note; *see also* Compl. Ex. D, ECF No. 1-1 at 29-31.)[4] Plaintiffs obtained the Loan to finance the Property, which is a commercial duplex. (*See* Answer Ex. 4, ECF No. 2-1 at 17-21; Compl. Ex. E, ECF No. 1-1 at 32; Compl. Ex. F, ECF No. 1-1 at 33-34.) The Note is secured by the DOT, dated September 12, 1996, as modified on December 15, 2001 by the MDOT, executed by Plaintiffs. (Attach. C –DOT as Modified.) Both the DOT and MDOT are recorded in the Henrico County Land Records. (*See id.*)

---

[2] The *Lis Pendens* is filed in Book 5277, Pages 1195 to 1198 of the Henrico County Land Records. (Attach. D – *Lis Pendens*.) On a motion for judgment on the pleadings, the record includes documents of which the Court takes judicial notice. *See Tellabs*, 551 U.S. at 322.

[3] Although the complete DOT and MDOT were not attached to the pleadings, they were referenced therein. (*See, e.g.*, Compl. ¶¶ 5-6.) As these documents are referenced in the pleadings, the Court may consider them as part of the record in deciding Defendants' Motion for Judgment on the Pleadings. *See Tellabs*, 551 U.S. at 322.

[4] For all exhibits, the Court adopts the pagination assigned by the CM/ECF system.

On June 6, 2003, CWB merged with First Community Bank, N.A. ("FCBNA"), which was the surviving entity. (Answer ¶ 13; Answer Ex. 5, ECF No. 2-1 at 22-23.) On April 14, 2011, the Boards of FCBNA and its sole owner, First Community Bancshares, Inc. ("FCBI"), issued a joint resolution that converted FCBNA from a national banking association to a Virginia state bank; in so doing, FCBNA began to operate under the name FCB. (Answer ¶ 13; Answer Ex. 7, ECF No. 2-1 at 29-32.)

On January 4, 2012, Plaintiffs executed a Change in Terms Agreement that extended the maturity date of the Note. (Attach. B – CIT Agreement; *see also* Compl. Ex. G, ECF No. 1-1 at 35.) The CIT Agreement identifies FCB as the lender. (Attach. B – CIT Agreement.)

On September 26, 2013, FCB provided Plaintiffs with a first notice of default as the Loan was four months in arrears. (Answer Ex. 4, ECF No. 2-1 at 19.) On November 25, 2013, FCB provided Plaintiffs with a second notice of default. (*Id.*) Around this time, FCB gave Plaintiffs the opportunity to cure the default; however, Plaintiffs failed to cure. (*Id.*) FCB then accelerated the amount due under the Note and scheduled a foreclosure sale for February 28, 2014. (*Id.*) Thereafter, on January 24, 2014, FCB appointed KBB as the substitute trustee under the DOT. (Compl. Ex. B, ECF No. 1-1 at 23-24.)

On February 20, 2014, Mr. Johnson filed a Chapter 13 Bankruptcy Petition (Mem. in Supp. Defs.' Mot. J. Pleadings, ("Defs.' Mem. Supp."), ECF No. 7 Ex. A Bankruptcy Petitions, ECF No. 7-1 at 2), automatically staying the foreclosure sale. *See* 11 U.S.C. § 362(a)(4). The first Bankruptcy Petition was dismissed on March 19, 2014, for Mr. Johnson's failure to file information with the Bankruptcy Court. (Bankruptcy Petitions at 2-5.)

Thereafter, on June 3, 2014, Mr. Johnson, proceeding *pro se*, filed a second Chapter 13 Bankruptcy Petition (*Id.* at 6). This Petition was dismissed on June 26, 2014 for Mr. Johnson's failure to file information with the Bankruptcy Court. (*Id.* at 6-10)

4

On July 9, 2014, Plaintiffs filed a Memorandum of *Lis Pendens* ("*Lis Pendens*") affecting the Property in the Circuit Court of Henrico County, Virginia. (Attach. D – *Lis Pendens*.) Thereafter, on July 17, 2014, Plaintiffs, proceeding *pro se*, instituted the present action by filing their Complaint in Henrico Circuit Court. (Notice of Removal, ECF No. 1 ¶ 1.)

On August 8, 2014, Defendants removed the suit to this Court pursuant to 28 U.S.C. § 1441, alleging federal jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' federal securities law claims. (Notice of Removal ¶ 3.) Defendants further alleged that this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are closely related to the federal claims. (Notice of Removal ¶ 4.) On August 13, 2014, Defendants filed an Answer to Plaintiffs' Complaint. (*See* Answer, ECF No. 2.)

On September 25, 2014, Defendants filed a Motion for Judgment on the Pleadings (ECF No. 6) under Federal Rule of Civil Procedure 12(c). Defendants argue that the pleadings affirmatively demonstrate a complete lack of factual support for Plaintiffs' Complaint. (Defs.' Mem. Supp. at 2-6.) On October 10, 2014, Plaintiffs, proceeding *pro se*, filed two objections (ECF Nos. 9, 10) to Defendants' Motion for Judgment on the Pleadings. On October 17, 2014, Defendants filed a Reply Memorandum in Support of their Motion (Reply Mem. Supp. Defs.' Mot. J. Pleadings, ("Defs.' Reply"), ECF No. 12).[5] Thereafter, on November 18, 2014, Plaintiffs, proceeding *pro se*, filed a further objection (ECF No. 13) to Defendants' Motion for Judgment on the Pleadings.

On December 9, 2014, following a conference call with the parties, the undersigned scheduled a hearing on Defendants' Motion for Judgment on the Pleadings for December 17, 2014. (Order, ECF No. 15.) On December 15, 2014, Plaintiffs' current counsel filed a notice of appearance in this action (Appearance of Counsel, ECF No. 16). Plaintiffs, by counsel, then filed a

---

[5] Defendants attached an affidavit and several exhibits to their Reply Memorandum. (Affidavit of James D. Kepley, Jr. ECF No. 12-1.) While this affidavit and accompanying exhibits provide useful information regarding the case, such information is not part of the record currently before the Court as it is outside of the pleadings. Accordingly, the Court has not considered this information.

5

Motion for Continuance, asking the Court to delay the hearing scheduled for December 17. (Mot. for Continuance, ECF No. 17.) On December 16, 2014, the undersigned granted Plaintiffs' Motion for Continuance. (ECF No. 18.) On December 18, 2014, following a phone conference, the undersigned rescheduled the hearing on Defendants' Motion for January 7, 2015. (ECF No. 19; Docket Entry 12/18/2014.)

On January 7, 2015, the parties appeared before the undersigned for a hearing on Defendants' Motion for Judgment on the Pleadings.[6] At the hearing, Defendants presented the original Note to the Court and entered three exhibits into the record: The Note (Defs.' Ex. A), the CIT Agreement (Defs.' Ex. B), and the DOT as Modified (Defs.' Ex. C). This matter is now before the Court on Defendants' Motion for Judgment on the Pleadings (ECF No. 6).

## II. STANDARD OF REVIEW

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "[T]he standard of review for a motion for judgment on the pleadings under Rule 12(c) is identical to that of a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Pro-Concepts*, 2014 WL 549294, at *4; *see Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

The standards of review for a motion to dismiss and a motion for judgment on the pleadings are identical. *Pro-Concepts*, 2014 WL 549294, at *5. However, on a motion for judgment on the pleadings, "the Court 'may consider the Answer as well,' and the 'factual allegations in the Answer are taken as true to the extent they have not been denied or do not conflict with the Complaint.'" *Id.* Moreover, the Court may consider attachments to the pleadings if they are integral to the pleadings and authentic, documents referenced in the pleadings, and matters of which the Court can take

---

[6] The undersigned also heard argument on Defendant FCB's Counterclaim.

judicial notice. *See Tellabs*, 551 U.S. at 322; *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Given that the standard of review for a Rule 12(c) motion is identical to the standard for a Rule 12(b)(6) motion—except for the ability of the Court to consider additional documents—the Court analyzes Defendant's Motion for Judgment on the Pleadings accordingly. "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 570 (citation omitted).

In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

Defendants move for dismissal of Plaintiffs' Complaint on the grounds that Plaintiffs' claims are meritless and lack sufficient factual bases. (Defs.' Mem. Supp. at 1-4.) Plaintiffs objected to the Motion for Judgment on the Pleadings; however, their objections merely restate the

allegations made in Plaintiffs' Complaint and additionally argue that Defendants' Motion is improper because Plaintiffs' claim to have filed a timely voluntary dismissal. (ECF Nos. 9, 10, 13.)

The Court proceeds first by examining Plaintiffs' Notice of Voluntary Dismissal, second by analyzing the factual predicates underlying Plaintiffs' claims, and third by analyzing Plaintiffs' claims themselves.

## A. Plaintiffs' Purported Voluntary Dismissal

At the outset, the Court notes that Plaintiffs argue that this case was dismissed prior to the filing of Defendants' Motion. (Objection J. Pleadings, ECF No. 9 at 1.) Therefore, Plaintiffs argue, Defendants' Motion should not be considered. (*Id.*) The Court disagrees.

On September 12, 2014, Plaintiffs filed a document styled "Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i)" (ECF No. 5). Rule 41 allows a plaintiff to voluntarily dismiss a case without a court order by filing "(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(i)-(ii). The plain language of Rule 41 does not allow a plaintiff to unilaterally dismiss the case after a defendant has appeared by filing an answer. *Id.*

In the instant case, Plaintiffs commenced this action against Defendants on July 17, 2014. (Notice of Removal ¶ 1.) On August 8, 2014, Defendants removed the action to this Court. (*See id.*) Thereafter, on August 13, 2014, Defendants filed an Answer (ECF No. 2) to Plaintiffs' Complaint. Moreover, Defendant FCB also filed a Counterclaim (ECF No. 3) on August 13, 2014. Plaintiffs did not file their Notice of Voluntary Dismissal (ECF No. 5) until thirty days later, on September 12, 2014.

8

Because Plaintiffs filed their Notice of Voluntary Dismissal after Defendants filed an Answer and after FCB filed a Counterclaim, Plaintiffs' Notice of Voluntary Dismissal was untimely and therefore did not operate to dismiss the action.

## B. Plaintiffs' Underlying Factual Allegations

Upon examination, the Court finds that the claims in Plaintiffs' Complaint are all in some form dependent on two underlying factual allegations. The first allegation is that FCB is not the successor in interest to CWB and, therefore, is not a party to the Loan Documents. (Compl. ¶¶ 14, 24, 36; *see also id.* ¶¶ 12, 18, 42.) The second allegation is that FCB is not the owner and holder of the Note, and therefore could not direct KBB to institute foreclosure proceedings. (Compl. ¶¶ 15-16, 18, 24, 42.) Defendants argue that these allegations are without merit, and therefore, that Plaintiffs have failed to allege sufficient facts to survive Defendant's Motion for Judgment on the Pleadings. (Defs.' Mem. Supp. at 2-3.) The Court agrees.

While the Court draws all reasonable inferences in Plaintiffs' favor, the Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Indeed, "the complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" *Id.* (citing *Twombly*, 550 U.S. at 570). Applying this standard, the Court first analyzes the merits of Plaintiffs' underlying factual allegations and then turns to an analysis of Plaintiffs' legal claims to determine whether the facts alleged by Plaintiffs can support their claims.

### 1. FCB is the Successor in Interest to CWB

Plaintiffs' first allegation, that FCB is not a party to the Loan Documents, underlies Plaintiffs' first, second, third, fourth, and fifth claims. Defendants addressed this allegation by attaching to their Answer a series of documents that demonstrate that FCB is the successor in

interest to CWB. (Answer Exs. 5-8, ECF No. 2-1 at 22-34.) Defendants have also affirmatively stated that FCB is the successor in interest to CWB. (Answer ¶ 13.)

On June 6, 2003, the Commonwealth of Virginia's State Corporation Commission issued a certificate of merger that certified that CWB merged with FCBNA and that FCBNA was the surviving entity. (Answer Ex. 5, ECF No. 2-1 at 23.) Title 6.2 of the Code of Virginia governs the merger of Virginia banks and national banks. Specifically, Virginia Code Ann. § 6.2-822(c) states that the surviving entity

> shall without further act or deed succeed to, and be vested with all offices, rights, obligations and relations of trust or of a fiduciary nature, including appointments, designations and nominations, existing immediately prior to the time at which such merger became effective, or then belonging or pertaining to any one or more of the banks, parties to such merger, or which would then inure to any one or more of such banks.

Virginia Code Ann. § 6.2-822(c). Therefore, when CWB merged with FCBNA, FCBNA succeeded to all of CWB's rights, including those under the Loan Documents.

Later, on April 14, 2011, the Boards of Directors of FCBNA and FCBI issued a joint resolution converting FCBNA from a national bank to a Virginia bank. (Answer Ex. 7, ECF no. 2-1 at 30-32.) Thereafter, on June 14, 2011, the State Corporation Commission issued a certificate of authority for FCB to operate as a Virginia bank.[7] (Answer Ex. 6, ECF No. 2-1 at 25-28.) Title 6.2 of the Code of Virginia governs the conversion of national banking associations to state banks. Specifically, Virginia Code Ann. § 6.2-824 states that "the state bank shall be considered to be the same business and corporate entity as the former national banking association" and that "[a]ny reference to the former national banking association in any contract, will, or document shall be deemed to be a reference to the state bank." Virginia Code Ann. § 6.2-824.

---

[7] FCB remains a currently operating bank in good standing and incorporated under the laws of Virginia. (Answer Ex. 8, ECF No. 2-1 at 34.)

10

By operation of merger, conversion, and Virginia law, FCB is the successor in interest to CWB. Importantly, any reference to CWB in the Loan Documents is legally a reference to FCB. *See* Virginia Code Ann. §§ 6.2-822(c), -824. Therefore, when the Loan Documents reference CWB, they effectively reference FCB, which formerly operated as FCBNA, the successor by merger to CWB.

Analyzing nothing more than the pleadings, the Court concludes that Plaintiffs have failed to plausibly allege that FCB is not the successor in interest to CWB. On the contrary, the pleadings demonstrate that FCB is a party to the Loan Documents and is entitled to all the rights to which CWB was entitled under the Loan Documents.[8]

### 2. FCB is the Owner and Holder of the Note

Plaintiffs' second allegation, which underlies Plaintiffs' sixth claim, is that FCB (through KBB, the substitute trustee) cannot foreclose on the Property because FCB is not the owner and holder of the Note. (Compl. ¶¶ 14, 24, 36; *see also id.* ¶¶ 12, 18, 42.) Defendants counter that FCB is the owner and holder of the note. (Answer ¶¶ 13, 20.) Defendants further affirmatively state that FCB was in possession of the Note until it delivered the Note to KBB, the substitute trustee. (*Id.*) Examining the record, the Court concludes that Defendants' are correct.

The Court first notes that this is not a case wherein an original lender securitized a loan and then sold the loan to a third party who then instituted foreclosure proceedings. On the contrary, the instant case is straightforward. Plaintiffs obtained the Loan directly from CWB. (Compl. Ex. D.) Thereafter, FCB came into ownership of the Note by operation of merger, conversion, and statute:

---

[8] While irrelevant to the analysis, the Court notes that prior to the commencement of this action Plaintiffs either did know or should have known that FCB was in fact the successor in interest to CWB. The Deed of Appointment of Substitute Trustee, recorded in the Henrico County Land Records, states that the grantor and beneficiary is "<u>FIRST COMMUNITY BANK</u> ("Beneficiary"), f/k/a First Community Bank, N.A., successor by merger to <u>Commonwealth Bank</u>." (Compl. Ex. B, ECF No. 1-1 at 23.) Furthermore, the CIT Agreement, which both Plaintiffs signed, lists FCB as the lender under the Note. (CIT Agreement at 35.) Finally, a letter that FCB, by counsel, sent to Plaintiffs explicitly states "that First Community Bank, f/k/a First Community Bank, N.A., successor by merger to Commonwealth Bank ("Lender"), is the owner and holder of [the Note]." (Answer Ex. 2, ECF No. 2-1 at 6; *see also* Answer Ex. 4, ECF No. 2-1 at 18.)

11

CWB merged with FCBNA, which then converted to FCB. Through this process, FCB succeeded to the property and rights of CWB. *See Kopunek v. PNC Bank N.A.*, 54 A.3d 256, *1-*2 (Del. 2012) (finding that under Delaware Code Title 8 § 259(c)—a statute substantially similar in relevant aspects to Virginia Code § 6.2-822(c)—the bank surviving a merger "became the holder of the notes, mortgages and commercial documents related to" the non-surviving bank's loan transactions with plaintiff).

Therefore, as discussed in detail previously herein, any reference to CWB on the Loan Documents is legally a reference to FCB. CWB, and therefore FCB, is listed as the "lender" on the Note and the "lender" and "beneficiary" on the DOT as Modified. (*See* Compl. Ex. D at 29; Attach. C – DOT as Modified.) Further, FCB is listed—under its own name—as the "lender" on the CIT Agreement, which Plaintiffs both signed. (CIT Agreement at 35.) As the lender and beneficiary, FCB is entitled to enforce the provisions of the Loan Documents. Furthermore, FCB was in possession of the Note until it delivered the Note to KBB during the foreclosure process. (*See* Answer ¶ 20.) Moreover, Defendants presented the Note to the Court during the January 7, 2015, hearing. Based on the foregoing, it is clear that FCB is the owner and holder of the Note. *Cf. Hien Pham v. Bank of New York*, 856 F. Supp. 2d 804, 812-15 (E.D. Va. April 10, 2012) (discussing factors that identify note holders).

Even were the Court to generously construe Plaintiffs' allegation to be that there are unknown parties who could legitimately be the owners and holders of the Note, Plaintiffs still have not made sufficient allegations to survive a motion for judgment on the pleadings. The Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."*Giarratano*, 521 F.3d at 302. While Plaintiffs do attempt to allege that FCB sold or offered to sell the Note in violation of federal securities laws, the allegations amount to nothing more than mere "formulaic recitations" of the elements of certain securities violations. *Twombly*, 550 U.S. at 555. "As such,

the allegations are conclusory and not entitled to be assumed true." *Ashcroft*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55).

Plaintiffs do not provide any persuasive argument, allegation, or documentation as to why unknown third parties, and not FCB, are the true owners and holders of the Note. Indeed, even construing Plaintiffs' allegations as broadly as possible, Defendants have refuted any suggestion that FCB is not the owner and holder of the Note. Defendants affirmatively stated in their Answer that FCB is the owner and the holder of the Note. (Answer ¶ 13.) Moreover, Defendants produced the Note to the Court at the hearing on January 7, 2015. Plaintiffs have made no plausible allegation that either CWB or FCB ever transferred ownership of the Note to a third party.[9] The Court has addressed a substantially similar argument before and found it to be "absurd[]":

> If it is true that [defendant] does not possess the Note, then it must also be true that another entity either possesses the Note or is entitled to rights as lender under the Note. . . . Given this, plaintiffs' assertion that [defendant] does not possess the Note depends on the incredible allegation that some unidentified entity acquired the Note . . . , and yet has sat idly by as plaintiffs have ceased making payments and [defendant] has begun asserting rights reserved for the noteholder. The assertion is also tantamount to the outlandish claim that [defendants] have conspired to deprive an unnamed entity of its rights under the Note and the Deed of Trust.

*Hien Pham*, 856 F. Supp. 2d at 813 n.14 (granting defendants' motion to dismiss despite plaintiffs' assertions that an unknown third-party was the legitimate owner and holder of the promissory note). Accordingly, the Court finds that Plaintiffs have failed to plausibly allege that FCB is not the true owner and holder of the Note. On the contrary, the pleadings demonstrate that FCB is in fact the owner and holder of the Note.

### C. Plaintiff's Claims

In their Complaint, Plaintiffs make six claims: (1) That FCB violated Virginia Code Ann. § 55-59.1 by failing to provide adequate protection for Plaintiffs in the face of a lost note; (2) – (4)

---

[9] KBB is currently in possession of the Note, acting in the capacity of trustee.

That FCB and CWB violated federal securities laws by selling or preparing to sell unregistered securities through the mail; (5) That CWB and FCB are liable for unjust enrichment as they have no claim to proceeds under the Note; and, (6) That KBB, as substitute trustee, breached its fiduciary duty to Plaintiffs by failing to confirm that FCB was entitled to foreclose on Plaintiffs under the Loan Documents. (Compl. ¶¶ 21-49.) Plaintiffs also allege that the "John and Jane Doe" defendants are unknown third parties who have an interest in the Property. (Compl. ¶ 3.)

As discussed above, Plaintiffs have failed to allege facts sufficient to demonstrate either (1) that FCB is not the successor in interest to CWB or (2) that FCB is not the owner and holder of the Note. These factual allegations underlie all six of the claims in Plaintiffs' Complaint. Finding that Plaintiffs have failed to sufficiently allege underlying factual bases for their claims, the Court analyzes each of Plaintiffs' claims in turn and finds them to be without merit.

### 1. Count I: Adequate Protection under Virginia Code Ann. § 55-59.1

The Court construes Plaintiffs' argument in Count I to be that, under the Loan Documents, Plaintiffs may be subject to claimants other than FCB. (Compl. ¶¶ 21-24.) Stated differently, Plaintiffs essentially argue that they could be liable under the Note to lenders other than FCB. Plaintiffs, therefore, argue that FCB should have provided Plaintiffs with adequate protection against these other claimants. Plaintiffs cite Virginia Code Ann. § 55-59.1(B) in support of their argument.

Virginia Code Ann. § 55-59.1(B) provides that

> [i]f a note . . . secured by a deed of trust is lost or for any reason cannot be produced . . . , the trustee may nonetheless proceed to sale, provided the beneficiary has given written notice to the [debtor] . . . . The notice shall further advise the [debtor] that if he believes he may be subject to a claim by a person other than the beneficiary to enforce the instrument, he may petition the circuit court of the county or city where the property . . . lies for an order requiring the beneficiary to provide adequate protection against any such claim. If [however] the trustee proceeds to sale, the fact that the instrument is lost or cannot

> be produced shall not affect the authority of the trustee to sell or the validity of the sale.

Virginia Code Ann. § 55-59.1(B). In essence, this Code provision is meant to provide some form of protection to borrowers from being held accountable to more than one lender. Importantly, this provision only has force "[i]f a note . . . secured by a deed of trust is *lost or for any reason cannot be produced.*" *Id.* (emphasis added).

Here, Plaintiff's Count I must fail because the Note in question is, and at all times, has been in the possession of FCB or KBB. (Answer ¶ 20.) The Note is not lost, and the Defendants have in fact produced the Note; therefore, Virginia Code Ann. § 55-59.1 is inapplicable to the present action. The Court recommends, therefore, that Plaintiffs' Count I be dismissed.

### 2. Counts II-IV: Violations of Federal Securities Laws

In Counts II through IV, Plaintiffs allege that FCB violated various provisions of federal securities laws. (Compl. ¶¶ 25-34.) Specifically, Plaintiffs seem to allege that FCB engaged in prohibited activity involving the purchase or sale of the Note and/or other securities. (*Id.* ¶¶ 26, 29, 33.)

These Counts must fail for two reasons. First, it is unlikely that the Note is a "security" within the meaning of the Securities Act of 1933 or of Securities and Exchange Act of 1934. The Fourth Circuit has suggested as much by finding that "a commercial mortgage-maker . . . may sell two different kinds of investment products to the public: 1) individual notes, which are not securities; and 2) interests in managed pools of notes, which are securities." *Zolfaghari v. Sheikholeslami*, 943 F.2d 451, 455 (4th Cir. 1991); *see also Reves v. Ernst & Young*, 494 U.S. 56, 65 (1990) (stating that "the note secured by a mortgage on a home [or] the short-term note secured by a lien on a small business or some of its assets" is not a security under the Securities Act (citing *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1138 (2d Cir. 1976))). The

15

instant case involves a single loan, made by a single lender and evinced by a single note, secured by a single property. The Note has not been bundled into a managed pool of notes; therefore, it is likely not a security within the meaning of federal securities laws. *See Zolfaghari*, 943 F.2d at 454-55.

Even assuming, *arguendo*, that the Note is a security within the meaning of federal securities laws, Plaintiffs' second, third, and fourth counts still must fail because they are nothing more than formulaic recitations of the elements of violations of federal securities laws. Mere formulaic recitations are not entitled to an assumption of truth. *See Aschroft*, 556 U.S. at 680-81.

The Court construes Plaintiffs' allegations to suggest two possibilities: (1) CWB illegally conspired with FCB to sell the Note to FCB, or (2) FCB and CWB conspired to illegally sell the Note to unknown third parties. The first interpretation must fail because—as discussed above—FCB owns the note by operation of merger, conversion, and statute. In other words, there was never a sale of the Note. The second interpretation must fail because Plaintiffs have not made allegations sufficiently specific to survive a motion for judgment on the pleadings. Plaintiffs have alleged no facts that plausibly support a claim that the Note has been sold to an unknown third party. Rather, Plaintiffs rely on conclusory allegations and formulaic recitations of causes of action. The Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarrantano*, 521 F.3d at 302; *see also Hien Pham*, 856 F. Supp. 2d at 813 n.14 (finding in a similar case that such an argument was "absurd[]" and "outlandish").

Because the Complaint does not allege facts sufficient to plausibly support Counts II through IV, and because those counts amount to nothing more than formulaic recitations of causes of action, the Court recommends that they be dismissed. *See Giarrantano*, 521 F.3d at 302 (citing *Twombly*, 550 U.S. at 570).

### 3. Count V: Unjust Enrichment

In Count V, Plaintiffs allege that FCB is liable for unjust enrichment as it is not entitled to collect the proceeds under the Note. (Compl. ¶¶ 35-37.) Plaintiffs specifically argue that FCB has "no legitimate interest in, or right to, the funds [under the Loan Documents]." (*Id.* ¶ 36.) Plaintiffs seem to base their argument on the allegation that FCB is not the successor in interest to CWB. (*Id.* ¶¶ 12-19, 36.) Plaintiffs' allegations and arguments are without merit.

As discussed above, any reference to CWB in the Loan Documents is legally a reference to FCB. Therefore, FCB is the lender under the Note and the beneficiary under the DOT as Modified. As a party to the Loan Documents, FCB is entitled to collect proceeds and institute foreclosure proceedings under them. Because FCB has these rights under the Loan Documents, the Court recommends that Count V be dismissed.

### 4. Count VI: KBB's Breach of Fiduciary Duty

Plaintiffs' Count VI is against KBB for breach of its fiduciary duty as trustee to Plaintiffs under the DOT as Modified. (Compl. ¶¶ 38-49.) Plaintiffs' claim relies on the proposition that KBB breached its fiduciary duties by failing to confirm that FCB was in fact the owner and holder of the Note, entitled to foreclose under the Loan Documents. (Compl. ¶ 42.) Plaintiffs' claim is meritless.

As discussed above, FCB is entitled to all rights under the Loan Documents as the ultimate successor by merger to CWB. Furthermore, FCB is also the owner and holder of the Note. Any allegation to the contrary would be "absurd[]." *See Hien Pham*, 856 F. Supp. 2d at 813 n.14. On January 24, 2014, following Plaintiffs' default and failure to cure, FCB appointed KBB as the substitute trustee. (*See* Compl. Ex. B, ECF No. 1-1 at 23; Answer Ex. 4, ECF No. 2-1 at 19; Answer Ex. 2, ECF No. 2-1 at 6.) Thereafter, FCB delivered the Note to KBB. (*See* Answer ¶ 20.) Defendants presented the Note to the Court at the hearing on January 7, 2015.

Based on the foregoing, it is clear that KBB did not violate any fiduciary duty through an alleged failure to confirm that FCB was entitled to foreclose under the Loan Documents. FCB, in fact, was entitled to foreclose under the Loan Documents, and KBB knew as much, as FCB itself—the lender and beneficiary under the Loan Documents—appointed KBB as the substitute trustee. (*See* Compl. Ex. B, ECF No. 1-1 at 23; Answer Ex. 4, ECF No. 2-1 at 19; Answer Ex. 2, ECF No. 2-1 at 6.) FCB then delivered the Note to KBB and instructed KBB to institute foreclosure proceedings. (*See* Answer ¶ 20; Answer Ex. 4, ECF No. 2-1 at 19.) Therefore, Plaintiffs' breach of fiduciary duty claim against KBB is meritless, and the Court accordingly recommends that Count VI be dismissed.

### D. The Memorandum of *Lis Pendens*

As a final matter, the Court takes notice of the fact that on July 9, 2014, Plaintiffs filed the *Lis Pendens* affecting the Property in the Circuit Court of Henrico County, Virginia. (Attach. D – *Lis Pendens*.) Defendants have requested that this Court order Plaintiffs to remove the *Lis Pendens*, so as to remove the cloud on the Property's title in advance of a foreclosure sale. (Defs.' Mem. Supp. at 6.)

A memorandum of *lis pendens* is a notice that a particular property is the subject of litigation. W. Hamilton Bryson, *Bryson on Virginia Civil Procedure* § 7.07 (4th ed. 2005). As such, it puts interested parties on notice that, should they purchase the property, they do so subject to the outcome of the litigation. *Id.* While not technically a lien, a *lis pendens* is in the nature of a lien. *Id.* A *lis pendens* effectively frustrates the sale of property, because potential purchasers may hesitate before purchasing a property that is the subject of ongoing or threatened litigation. *See Geris v. Piedmont Federal Corporation*, No. 93-836-A, 1994 WL 603198, *1 (E.D. Va. Apr. 14, 1994) ("[A *lis pendens*] provides a warning to look carefully at the property's title . . . . They are, therefore, a definite impediment to effective sale of real property.")

18

The *Lis Pendens* filed by Plaintiffs affects the Property at issue in this action. (Attach. D – *Lis Pendens*.) Because the Court now recommends the dismissal of this action, the Court also finds it appropriate to order Plaintiffs to remove the *Lis Pendens*. *See Geris*, 1994 WL 603198, *1-*2 (ordering plaintiffs to advise the local clerks' offices to remove memoranda of *lis pendens* filed against properties involved in a federal lawsuit). Accordingly, the Court recommends that Plaintiffs be ordered to take all necessary action to remove the *Lis Pendens* affecting the Property, filed in the Circuit Court of Henrico County.

## IV. CONCLUSION

Because Plaintiffs fail to allege facts that plausibly support any of their six claims, the Court RECOMMENDS that Defendants' Motion for Judgment on the Pleadings (ECF No. 6) be GRANTED, that this action be DISMISSED with PREJUDICE, and that Plaintiffs be ORDERED take all necessary action to remove the Memorandum of *Lis Pendens* affecting the Property within ten (10) days.

The Clerk is directed to file this Report and Recommendation electronically and send a copy to all counsel of record and to Robert E. Payne, Senior United States District Court Judge.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ _____
Roderick C. Young
United States Magistrate Judge

Richmond, Virginia
Date: February 19, 2015