IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CALVIN HENRY JOHNSON, *et al.*, )
    Plaintiffs, )
     )
     )
    v. )    Civil Action No.  3:14CV563 (REP-RCY)
     )
FIRST COMMUNITY BANK, *et al.*, )
    Defendants. )
     )

**REPORT AND RECOMMENDATION**
**on**
**Counterclaim of First Community Bank, and**
**Plaintiffs' Motion for Extension to File Pleadings *Nunc Pro Tunc***

Plaintiffs Calvin Henry Johnson and Geraline Johnson (collectively "the Johnsons" or "Plaintiffs/Counter-Defendants the Johnsons") own a commercial duplex in Henrico County, commonly known as 2696 Byron Street, Richmond, Virginia 23232 and 2698 Byron Street, Richmond, Virginia 23232 ("the Property").  In 2001, the Johnsons obtained a loan ("the Loan") from CommonWealth Bank ("CWB"); in so doing, the Johnsons executed the Promissory Note ("Note") as modified by the Change in Terms Agreement ("CIT Agreement"), secured by the Property through the Deed of Trust ("DOT") as modified by the Modification of Deed of Trust ("MDOT") (collectively "Loan Documents").  CWB later became First Community Bank ("FCB" or "Defendant/Counter-Plaintiff FCB") through a merger and subsequent conversion.

In 2013, the Johnsons defaulted on the Loan.  Thereafter, FCB provided the Johnsons with the opportunity to cure the default.  The Johnsons failed to cure, and Kepley Broscious & Biggs PLC ("KBB"), the substitute trustee, thereafter attempted sell the property at foreclosure.  The Johnsons have since filed two bankruptcy actions, both automatically staying foreclosure attempts by FCB and KBB.  The Johnsons have also filed a Memorandum of *Lis Pendens* with the Circuit Court of Henrico County, Virginia, effectively frustrating foreclosure.  In July 2014, the Johnsons

initiated this lawsuit against FCB and KBB (collectively "Defendants") in the same court (Complaint, ECF No. 1-1).

On August 13, 2014, upon removal to this Court, Defendant/Counter-Plaintiff FCB filed a Counterclaim against Plaintiffs/Counter-Defendants the Johnsons (Counterclaim of First Community Bank, ("FCB's Counterclaim"), ECF No. 3), seeking damages related to the Johnsons' default under the Loan Documents.  The Johnsons, proceeding *pro se* at the time, did not file an answer to FCB's Counterclaim.  Rather, on September 12, 2014, the Johnsons filed a document styled "Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i)" (("Notice of Voluntary Dismissal"), ECF No. 5).

Thereafter, on September 25, 2014, Defendant/Counter-Plaintiff FCB filed a Request for Clerk's Entry of Default Judgment (Request for Clerk's Entry of Default J., ("Mot. Default J."), ECF No. 8).  On October 10, 2014, the Johnsons, still proceeding *pro se*, filed an Objection to the Request for Clerk's Entry of Default Judgment (Objection to the Request for Clerk's Entery of Default J., ("Johnsons' Objection to Default J."), ECF No. 11).

On January 7, 2015, hours before a scheduled hearing on FCB's Counterclaim, the Johnsons, by counsel, filed a Motion for Extension of Time to File Pleadings *Nunc Pro Tunc* (Mot. for Extension of Time to File Pleadings *Nunc Pro Tunc*, ("Mot. for Extension"), ECF No. 20).  That same day, the Court heard oral argument on the issues and allowed the parties to brief the Motion for Extension. (*See* Order, ECF No. 22).[1]

This matter is now before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on Plaintiffs/Counter-Defendants the Johnsons' Motion for Extension of Time to File Pleadings *Nunc Pro Tunc* (ECF No. 20) and Defendant/Counter-Plaintiff FCB's

---

[1] At the hearing, the Court also allowed the parties to address Defendants' Motion for Judgment on the Pleadings (ECF No. 6). The Court has addressed Defendants' Motion for Judgment on the Pleadings in a separate Report and Recommendation. (Report and Recommendation on Defs.' Mot. for J. on the Pleadings, ECF No. 28.)

Request for Clerk's Entry of Default Judgment (ECF No. 8). For the reasons set forth below, the Court RECOMMENDS that Plaintiffs/Counter-Defendant the Johnsons' Motion for Extension of Time to File Pleadings *Nunc Pro Tunc* (ECF No. 20) be DENIED, that Defendant/Counter-Plaintiff FCB's Request for Clerk's Entry of Default Judgment (ECF No. 8) be GRANTED, that the Clerk be DIRECTED to enter Plaintiffs/Counter-Defendants the Johnsons' DEFAULT as to FCB's Counterclaim (ECF No. 3), and that FINAL JUDGMENT on FCB's Counterclaim (ECF No. 3) be entered in favor of Defendant/Counter-Plaintiff FCB and against Plaintiffs/Counter-Defendants the Johnsons.

## I. STATEMENT OF FACTS

### A. General Background

"When a [plaintiff/counter-]defendant defaults he admits 'the [defendant/counter-]plaintiff's well-pleaded allegations of fact.'" *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. March 26, 2014) (quoting *Ryan v. Homecomings Financial Network*, 253 F.3d 778, 780 (4th Cir. 2001)). As discussed below, the Court finds Plaintiffs/Counter-Defendants the Johnsons to be in default; therefore, the Court takes the allegations of fact in FCB's Counterclaim to be admitted and finds the record on the present motion to be as follows.[2]

On December 15, 2001, the Johnsons obtained the Loan from CWB and executed the Note (Promissory Note, ("Note"), ECF No. 3-1 at 1-4.),[3] as modified by the Change in Terms Agreement (Change in Terms Agreement, ("CIT Agreement"), ECF No. 3-1 at 5-6), in the principal amount of $72,250. Plaintiffs obtained the Loan, which is a commercial loan, and secured it with the Property. (*See* FCB's Counterclaim ¶ 7; Note at 3.) The security is evinced by the DOT, dated September 12,

---

[2] The facts stated herein are those constituting the record for FCB's Motion for Default Judgment. A full background of the case is presented in the Court's findings of fact as to Defendants' Motion for Judgment on the Pleadings. (*See* Report and Recommendation on Defs.' Mot. for J. on the Pleadings, ECF No. 28.)

[3] For all exhibits, the Court adopts the pagination assigned by the CM/ECF system.

3

1996, as modified on December 15, 2001 by the MDOT, both executed by the Johnsons. (DOT as Modified, ("DOT as Modified"), Attach. C to Report and Recommendation on Defs.' Mot. for J. on the Pleadings, ECF No. 28-3.)[4] Both the DOT and MDOT are recorded in the Henrico County Land Records. (*See id.*) FCB is the owner and holder of the Note, the lender under the Note, and the lender and beneficiary under the DOT as Modified.[5] (FCB's Counterclaim ¶ 6; *see* Note at 2; CIT Agreement at 6; DOT as Modified.)

On November 25, 2013, FCB, through KBB, notified the Johnsons that they were in default under the Note. (Notice of Default and Demand for Cure, ("Notice of Default"), ECF No. 3-1 at 7-9; FCB's Counterclaim ¶ 8.) Specifically, FCB notified the Johnsons that, as of July 15, 2013, they had failed to make regular payments of principal and interest. (Notice of Default at 8.) In the Notice of Default, FCB made a demand of the Johnsons to cure the default by December 13, 2013. (*Id.*; FCB's Counterclaim ¶ 8.) The Johnsons failed to comply with the demand to cure. (FCB's Counterclaim ¶ 9.) Therefore, on January 31, 2014, FCB accelerated the amount due under the Note. (*Id.*)

**B. Procedural Posture of the Counterclaim**

On August 13, 2014, following removal to this Court, Defendant/Counter-Plaintiff FCB filed its Counterclaim against Plaintiffs/Counter-Defendants the Johnsons. (FCB's Counterclaim, ECF No. 3.) On August 13, 2014, counsel for FCB originally served the Johnsons with FCB's Counterclaim by mail; however, the wrong address was used. (Aff. of Kimberly A. Taylor,

---

[4] The DOT is recorded in book 2673, pages 1160 to 1171 of the land records of Henrico County, Virginia. The MDOT is recorded in book 3204, pages 1819 to 1823 of the land records of Henrico County, Virginia. The Court may take judicial notice of matters of public record. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (discussing the record on a Rule 12(b)(6) motion); *see also Willis v. Bank of Am. Corp.*, No. ELH-13-02615, 2014 WL 3829520, at *2 n. 6 (D. Md. Aug. 1, 2014) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (taking judicial notice of land records).

[5] In the related Report and Recommendation on Defendants' Motion for Judgment on the Pleadings, the Court sets forth its analysis for finding, conclusively, that FCB is the owner and holder of the Note. (*See* Report and Recommendation on Defs.' Mot. for J. on the Pleadings, ECF No. 28.) Moreover, for the purposes of the FCB's Counterclaim, this allegation is deemed admitted because the Johnsons are in default.

("Taylor Aff."), ECF No. 8-2 ¶ 2.) On August 28, 2014, counsel for FCB served FCB's Counterclaim on the Johnsons at their correct address. (*Id.* ¶ 3.)

On September 12, 2014, the Johnsons, proceeding *pro se*, filed a "Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i)" (Notice of Voluntary Dismissal, ECF No. 5). This Notice of Voluntary Dismissal was untimely, and therefore inoperative, as Defendants had already filed their Answer (ECF No. 2) to the Johnsons' Complaint (ECF No. 1-1).[6]

Thereafter, on September 25, 2014, Defendant/Counter-Plaintiff FCB filed a Request for Clerk's Entry of Default Judgment (Request for Clerk's Entry of Default J., ("Mot. Default J."), ECF No. 8). In the Motion for Default Judgment, Defendant/Counter-Plaintiff FCB requested that the Clerk enter the default of Plaintiffs/Counter-Defendants the Johnsons under Rule 55(a) and further enter default judgment against Plaintiffs/Counter-Defendants the Johnsons under Rule 55(b)(1). (*Id.*) Defendant/Counter-Plaintiff FCB supported is Motion for Default Judgment with affidavits from FCB's counsel, Kimberly A. Taylor, (Taylor Aff.) and FCB's Vice President, Shane P. Carosi (Aff. of Shane P. Carosi, ("Carosi Aff."), ECF No. 8-1).

The Taylor Affidavit indicated, among other things, that Ms. Taylor served Plaintiffs/Counter-Defendants the Johnsons with FCB's Counterclaim on August 28, 2014. (Taylor Aff. ¶ 3.) The Carosi Affidavit indicated, among other things, the amount due under the Note, which contained both sum-certain amounts and an amount able to be made certain with computation. (Carosi Aff. ¶ 3.) By the end of September 2014, Plaintiffs/Counter-Defendants the Johnsons had not filed an answer or otherwise addressed the allegations in Defendant/Counter-Plaintiff FCB's Counterclaim.

---

[6] In the related Report and Recommendation on Defendants' Motion for Judgment on the Pleadings, the Court fully explains its analysis for finding that this Notice was untimely and inoperative. (*See* Report and Recommendation on Defs.' Mot. for J. on the Pleadings, ECF No. 28.)

On October 10, 2014, forty-three days after being served with FCB's Counterclaim, Plaintiffs/Counter-Defendants the Johnsons, proceeding *pro se*, filed an Objection to FCB's Motion for Default Judgment (Pls.' Objection to Default J., ECF No. 11). In their Objection, the Johnsons did not address FCB's Counterclaim or the allegations therein. (*See id.*) Rather, the Johnsons merely argued that they had taken a timely voluntary dismissal; they did not make any other argument or otherwise resist FCB's Counterclaim. (*See id.*) Through both October and November 2014, the Johnsons did not address FCB's Counterclaim or the allegations therein.

On December 9, 2014, following a conference call with the parties, the undersigned scheduled a hearing on FCB's Motion for Default Judgment for December 17, 2014. (Order, ECF No. 15.) On December 15, 2014, however, the Johnsons' current counsel filed a notice of appearance in this action (Appearance of Counsel, ECF No. 16). Thereafter, the Johnsons, by counsel, filed a Motion for Continuance, asking the Court to delay the hearing scheduled for December 17, because the Johnsons' counsel had a scheduling conflict and needed time to prepare. (Mot. for Continuance, ECF No. 17. ¶¶ 3-4.) On December 16, 2014, the undersigned granted the Johnsons' Motion for Continuance, but only for the reason that the Johnsons' counsel had a pre-existing scheduling conflict. (Order, ECF No. 18.)

On December 18, 2014, following a phone conference, the undersigned rescheduled the hearing on FCB's Motion for Default Judgment for January 7, 2015. (Order, ECF No. 19; Docket Entry 12/18/2014.) By the end of December 2014, the Johnsons—now represented by counsel—had not filed an answer or otherwise addressed the allegations in FCB's Counterclaim.

A few hours before the hearing on January 7, 2015, one hundred and thirty-two days after being served with FCB's Counterclaim, the Johnsons, by counsel, filed their Motion for Extension to answer FCB's Counterclaim (Mot. for Extension, ECF No. 20). The Johnsons' Motion for Extension argues that the Johnsons' Objection to Default Judgment constituted an answer to FCB's

Counterclaim. (Mot. for Extension ¶ 2.)  The Motion further argues that the Johnsons were delayed in filing an answer as they were in the process of hiring counsel. (*Id.* ¶ 3.)

At the January 7 hearing, the Court heard argument on FCB's Motion for Default Judgment and ordered the parties to file briefs on the Johnsons' Motion for Extension.  (Docket Entry 1/7/2015, ECF No. 21; Order, ECF No. 22.)  On January 8, 2015, the Johnsons, by counsel, erroneously filed their Answer to FCB's Counterclaim (Answer, ("Proffered Answer"), ECF No. 23).  On January 12, 2015, FCB filed its Memorandum in Opposition (Mem. Opp'n Mot. for Extension, ("FCB's Mem. Opp'n"), ECF No. 25) to the Motion for Extension.[7]  On January 14, 2015, the Johnsons filed their Memorandum in Support (Mem. Supp. Pls.' Mot. for an Extension of Time to File Pleadings *Nunc Pro Tunc*, ("the Johnsons' Mem. Supp."), ECF No. 26).  Thereafter, on January 15, 2015, FCB filed a Response (Lender's Resp. to Reply Mem., ("FCB's Resp."), ECF No. 27) to the Johnsons' Memorandum in Support.  In its Response, FCB noted that the Johnsons' Memorandum in Support erroneously referred to the Property as Plaintiffs' home, when in fact the Property is a commercial duplex.  (FCB's Response at 1; *see also* FCB's Counterclaim ¶ 7.)

This case is now before the Court for Report and Recommendation on Plaintiffs/Counter-Defendants the Johnsons' Motion for Extension of Time to File Pleadings *Nunc Pro Tunc* (ECF No. 20) and Defendant/Counter-Plaintiff FCB's Request for Clerk's Entry of Default Judgment (ECF No. 8).  The Court has heard oral argument, and the issues are fully briefed and ripe for review.

## II. STANDARD OF REVIEW

The entry of default judgment is a two-step process, and "[t]he entry of default is a prerequisite to the entry of a default judgment." *Eagle Fire, Inc. v. Eagle Integrated Controls, Inc.*, No. 3:06cv264, 2006 WL 1720681, at *5 (E.D. Va. June 20, 2006) (citation omitted); *see* Fed. R. Civ. P. 55.  Therefore, the Court's analysis must address (1) whether the Johnsons are in default and

---

[7] The Court notes that FCB filed its Memorandum in Opposition on Monday January 12, 2015, although it was due on Friday January 9, 2015. (*See* Order, ECF No. 22.)

(2) whether default judgment is appropriate. The Johnsons' Motion for Extension will necessarily be analyzed within the context of determining whether the Johnsons are in default, because if the Court were to grant the Motion for Extension, the Johnsons would no longer be in default as they would have leave to file a late answer to FCB's Counterclaim.

## A. The Entry of Default

Given the posture of this action, the Court could take one of two routes to analyze the Johnsons' Motion for Extension and the propriety of finding the Johnsons to be in default. The first route is to proceed as if default has been entered and analyze Plaintiffs' Motion for Extension as a Rule 55(c) motion to set aside the entry of default. The second route is to independently analyze Plaintiffs' Motion for Extension under the excusable neglect standard and then determine if Plaintiffs are in default for failing to defend against FCB's Counterclaim.

### i. Rule 55(c) Standard for Setting Aside an Entry of Default

Proceeding under the first route, the Court would analyze the Johnsons' Motion for Extension as a Rule 55(c) motion to set aside the entry of default. FCB argues that the Court should adopt this analysis and consider the Johnsons to be in existing default, because the standard under Rule 55(a) is that a non-defending party's default *must* be entered. (FCB's Mem. Opp'n at 3.) The Court notes, however, that the Clerk never actually entered the Johnsons' default.

Proceeding, as FCB urges, by analyzing the Johnsons' Motion for Extension as a motion to set aside entry of default under Rule 55(c) would require the Court to grant the Johnsons' Motion for Extension only if "good cause" exists to do so. *See* Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause."). Under this analysis, the Court would proceed as if the Clerk had entered the Johnsons' default on or around September 25, 2014. However, if the Johnsons have demonstrated that good cause exists to set aside this entry of default, the Court would allow them to file an answer, and the Court would necessarily deny FCB's Motion for

Default Judgment. If, however, the Court finds that good cause to set aside the entry of default does not exist, the Court would accordingly deny the Johnsons' Motion for Extension, and the analysis would then continue to a determination as to whether the entry of default judgment under Rule 55(b) is appropriate.

In determining whether good cause exists to set aside an entry of default, "a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006).

### ii. Independent Determinations of Excusable Neglect and Entry of Default

The second route is to (1) analyze Plaintiffs' Motion for Extension under the excusable neglect standard and then (2) determine if Plaintiffs are in default. The Court previously adopted this method in a case very analogous to the present: *Eagle Fire, Inc.*, 2006 WL 1720681, at *1 (first denying a motion for extension to file a late answer and, second, entering the non-defending party's default).

### a) Excusable Neglect

In the first step of this route, the Court would determine if the Johnsons' Motion for Extension should be granted using the excusable neglect standard. The Supreme Court has stated that "'excusable neglect' may extend to inadvertent delays... [but] inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" *Pioneer Inv. Serv. Co. v. Brunswick Assocs.*, 507 U.S. 380, 392 (1993) (analyzing the excusable neglect standard in relation to Fed. R. Bankr. P. 9006(b)). A district court's determination to grant an extension is ultimately "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The factors a court considers when determining excusable neglect include:

9

"the danger of prejudice to the [non-movant], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* While the Supreme Court's ruling in *Pioneer* related to Fed. R. Bankr. P. 9006(b), the Fourth Circuit has stated that these factors have "general application" beyond bankruptcy "[in] consideration of excusable neglect." *Skinner v. First Union Nat'l Bank*, 178 F.3d 1285, *2 (4th Cir. 1999) (*citing Thompson v. E.I. Dupont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996)).

### b) Entry of Default

In the second step of this route, the Court would then determine if default is appropriate under Rule 55. Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Court has noted that "[t]he pleadings referred to in Rule 55(a) are those listed in Fed. R. Civ. P. 7(a)." *Eagle Fire, Inc.*, 2006 WL 1720681, at *5 (citation omitted) (discussing old Rule 55(a)).[8] The defensive pleadings listed in Rule 7(a) are: answers to complaints, answers to counterclaims designated as counterclaims, answers to crossclaims, answers to third-party complaints, and replies to answers. Fed. R. Civ. P. 7(a).

If a party has failed to plead, a court must next determine whether that party has failed to "otherwise defend." Fed. R. Civ. P. 55(a). The "otherwise defend" language contemplates challenges to a counterclaim, such as motions to dismiss, filed in the absence of a responsive pleading. *See Eagle Fire, Inc.*, 2006 WL 1720681, at *5; *see also* 10A Charles Alan Wright et al.,

---

[8] The revisions to Rule 55(a) that occurred following the *Eagle Fire, Inc.* case primarily addressed the "otherwise defend" language of Rule 55(a). *See* Fed. R. Civ. P. 55 advisory committee note to the 2007 amendment (discussing the previous language that specifically stated "otherwise defend as provided by these rules"). Accordingly, the Court construes the language "has failed to plead" in revised Rule 55(a) to have the same meaning ascribed to former Rule 55(a) in *Eagle Fire, Inc. See also* 10A Charles Alan Wright et al., *Federal Practice and Procedure, Jurisdiction* § 2682 (3d ed.1998 & Supp. 2014) ("Entry of default for failure to plead or otherwise defend is not limited to situations involving a failure to answer a complaint but applies to any of the pleadings listed in Rule 7(a).").

*Federal Practice and Procedure, Jurisdiction* § 2682 & n.14 (3d ed.1998 & Supp. 2014) ("The words 'otherwise defend' refer to the interposition of various challenges . . . any of which might prevent a default if pursued in the absence of a responsive pleading."). Ultimately, if a party has— in a timely fashion—indicated that it intends to resist the claims in the counterclaim, default is inappropriate. *See Eagle Fire, Inc.*, 2006 WL 1720681, at *5. On the contrary, if a party fails to demonstrate any intention to resist the counterclaim within the time allowed by the Rules, that party has failed to "otherwise defend," and the entry of default is appropriate. *See id.*

## B. Entry of Default Judgment

Regardless of the route taken by the Court to determine whether the entry of default is appropriate, the Court would next determine whether the entry of default judgment is appropriate. The Court must take three steps to determine the propriety of entering default judgment: (1) the Court must first determine if the non-defending party has appeared before the Court; (2) assuming the party has appeared, the Court must then find that the factors in Rule 55(b)(2) are satisfied; and, (3) the Court must also be satisfied that the complaint on which default judgment is sought states a claim for which relief can be given. *See* Fed. R. Civ. P. 55(b); *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. March 26, 2014); *JTH Tax, Inc. v. Smith*, No. 2:06cv76, 2006 WL 1982762, at *1 (E.D. Va. June 23, 2006); *see also Citibank, N.A. v. TPI Group, Inc.*, No. 1:13cv1007, 2014 WL 2579984, at *5 (E.D. Va. June 9, 2014).

### i. Appearance

Following the entry of default, the Clerk must enter default judgment against a party "who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). If, however, the party against whom default judgment is sought has appeared, only the Court may enter default judgment. *See* Fed. R. Civ. P. 55(b)(2).

The primary difference between Rule 55(b)(1) and Rule 55(b)(2) is whether the defaulting party has appeared.[9] If a defaulting party has appeared, only the Court may enter default judgment. When a plaintiff initiates an action by filing a complaint, he has appeared before the court. *See* 10A Charles Alan Wright et al., *Federal Practice and Procedure, Jurisdiction* § 2686 (3d ed.1998 & Supp. 2014). "This is true even when [a] plaintiff fails to take any action with regard to the subsequent filing of a cross-claim or counterclaim against him." *Id.*; *cf. Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (noting that "the actual filing of a document in the record" constitutes an appearance); *Starr Consulting, Inc. v. Global Resources Corp.*, No. 1:06cv586, 2007 WL 4380101, at *3 (M.D.N.C. Dec. 11, 2007) (citations omitted) ("[C]ourts have broadly construed the word "appear.").

Therefore, if a party initiated the action or filed papers with the Court, Rule 55 requires that the Court, rather than the Clerk, enter default judgment.

### ii. Rule 55(b)(2) Factors

Under Rule 55(b)(2), the Court may enter default judgment against a non-defending party if (1) default has been entered against that party, (2) that party is neither an infant nor an incompetent person, (3) that party is not in military service, and (4) that party has received notice of the application for default judgment at least seven days before a hearing on the matter. *See* Fed. R. Civ. P. 55(b)(2); *Smith*, 2006 WL 1982762, at *1.

### iii. Claim for Which Relief can be Given

Furthermore, "[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving part is not entitled to default judgment as a matter of right." *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009). In addition to finding the requirements of Rule

---

[9] There is also a difference in the treatment of minors and incompetent persons; however, that difference is irrelevant for purposes of this action.

55(b)(2) to be satisfied, a Court must also determine whether the complaint/counterclaim on which default judgment is sought "states a legitimate cause of action." *See Citibank, N.A. v. TPI Group, Inc.*, No. 1:13cv1007, 2014 WL 2579984, at \*5 (E.D. Va. June 9, 2014) (citing *Anderson v. Foundation for Advancement, Education & Employment of American* Indians, 155 F.3d 500, 506 (4th Cir. 1998)).

The Court has made this determination under the Rule 12(b)(6) motion to dismiss standard. *See id.* (applying the Rule 12(b)(6) standard in a default judgment context); *JTH Tax, Inc.*, 8 F. Supp. 3d at 736 (same). "Accordingly, in the default judgment context, factual allegations in the complaint are deemed admitted and the appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." *Grabert*, 8 F. Supp. 3d at 736 (internal quotation marks omitted) (citation omitted).

### III. DISCUSSION

#### A. Entry of Default

Examining the facts of the case, it is clear that both routes for determining whether the Johnsons are in default as to FCB's Counterclaim lead to the same conclusion; that is—the Johnsons are in default for failing to defend. Nonetheless, given the case's posture, the Court analyzes the issue of default under both the standards discussed above.

##### i. Rule 55(c), Setting Aside an Entry of Default

Proceeding, as FCB urges, by analyzing the Johnsons' Motion for Extension as a motion to set aside entry of default under Rule 55(c) requires that the Court grant the Johnsons' motion only if "good cause" exists to do so. *See* Fed. R. Civ. P. 55(c).

In determining whether good cause exists to set aside an entry of default, "a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether

13

there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006); *see also Mahmoodian v. Pirnia*, No. 3:11cv5, 2011 WL 4566108, at *2 (E.D. Va. Sept. 30, 2011).

### a) Meritorious Defense

While it is not officially filed as the Court has not granted leave to file, the Johnsons have submitted an answer (Proffered Answer, ECF No. 23) to FCB's Counterclaim. This Proffered Answer offers insight into the merits of the Johnsons' defense against FCB's Counterclaim. The Johnsons' defense is based primarily on two contentions: (1) FCB is not the owner of the Note (Proffered Answer ¶ 2), and (2) the Loan was not a commercial loan (Proffered Answer ¶ 3).

The Court has addressed these contentions in the Report and Recommendation on Defendants' Motion for Judgment on the Pleadings (ECF No. 28). As discussed therein, the Court has found that FCB is the owner of the Note and that it is entitled to foreclose under the Note and collect proceeds under the Note. Moreover, the Court has found that the Note that evinces the Loan was made to Plaintiffs for their acquisition of a commercial duplex property, not a private home as now argued. (*See* Answer Ex. 4, ECF No. 2-1 at 17-21; Compl. Ex. E, ECF No. 1-1 at 32; Compl. Ex. F, ECF No. 1-1 at 33-34.) Accordingly, the Court finds that the Johnsons do not have a meritorious defense to FCB's Counterclaim.

### b) Promptness

The Court finds that the Johnsons have not acted with reasonable promptness in pursuing a defense against FCB's Counterclaim. The Johnsons were served at their correct address with FCB's Counterclaim on August 28, 2014. (Taylor Aff. ¶ 3.) The Federal Rules of Civil Procedure require a party to serve an answer to any counterclaim within 21 days of service. Fed. R. Civ. P. 12(a)(1)(B). Therefore, an answer to FCB's Counterclaim was due on September 18, 2014. The Johnsons, however, did not file any document that directly sought to address FCB's Counterclaim

or the allegations therein until they filed their Motion for Extension on January 7, 2015—one hundred and thirty-two days after service of FCB's Counterclaim. Moreover, the Johnsons delayed the filing of their Motion for Extension for twenty-three days following their retention of counsel on December 15, 2014.

In their Motion for Extension and at the hearing on January 7, 2015, the Johnsons argued that their Objection to Default Judgment (ECF No. 11) should constitute an answer to FCB's Counterclaim. (*See* Mot. for Extension ¶ 2.) The Johnsons' counsel argued that the Johnsons, who were formerly proceeding *pro se*, thought that the Objection would operate as an answer.

The Court, however, cannot construe the Objection to operate as an answer. In their Objection, the Johnsons did not address FCB's Counterclaim or the allegations therein. Rather, the Johnsons merely argued that they had taken a timely voluntary dismissal. (*Id.*) The Johnsons' Objection did not indicate a desire to defend against FCB's Counterclaim. It merely indicated an apparent belief that the case had been dismissed and a misunderstanding as to why the case was proceeding. *Cf. Eagle Fire, Inc.*, 2006 WL 1720681, at *2-*3 (finding a defendant in default although "it misunderstood the importance of filing an answer because 'it disagreed with the allegations stated in the Complaint'"). When a party fails to demonstrate any intention to resist the counterclaim within the time allowed by the Rules, that party has failed to "plead or otherwise defend," and the entry of default is appropriate. *See id.* at *5.

Furthermore, even were the Court to accept the Johnsons' argument, their Objection was untimely as it was filed on October 10, 2014, forty-three days after service of FCB's Counterclaim.

### c) Responsibility of Defaulting Party

The Johnsons' failure to file an answer or otherwise defend against FCB's Counterclaim can rest nowhere but on their own shoulders. The Johnsons themselves instituted the present action. Thereafter, they were served with FCB's Counterclaim on August 28, 2014. Further, they have had

actual notice of the pendency of this case in this Court since at least September 12, 2014, when they filed their Notice of Voluntary Dismissal (ECF No. 5) with this Court.

When the Johnsons filed their Notice of Voluntary Dismissal, they still had six days to file a timely answer or otherwise mount a defense against FCB's Counterclaim. The Johnsons neglected to do so. It was only after FCB requested that the Clerk enter default judgment that the Johnsons chose to make any filing with any regard to FCB's Counterclaim, via the aforementioned Objection to Default Judgment (ECF No. 11). In their Objection, the Johnsons did not address the merits of FCB's Counterclaim or offer any defense; rather, the Johnsons simply insisted that they had unilaterally dismissed the case by operation of their Notice of Voluntary Dismissal. *Cf. Eagle Fire, Inc.*, 2006 WL 1720681 at *2-*3 (finding a party to be in default even though it misunderstood the need to file an answer).

Moreover, it was not until December 9, 2014—one hundred and twenty-three days after the Johnsons initiated this action—that Mr. Johnson indicated that he may retain counsel. (*See* Order, ECF No. 15). Thereafter, on December 15, 2014, the Johnsons' counsel filed a notice of appearance with the Court (Appearance of Counsel, ECF No. 16). The Court then continued a hearing previously scheduled for December 17, 2014, for twenty-one days. Still, it was not until January 7, 2015, the day of the hearing, that Plaintiffs made any filing suggesting that they intended to defend against FCB's Counterclaim. (*See* Motion for Extension ¶ 1.)

The Johnsons ultimately chose to wait until one hundred and thirty-two days after receiving service of FCB's Counterclaim and twenty-three days until after retaining counsel to ask for leave to answer to FCB's Counterclaim. The Johnsons must bear the responsibility of their untimeliness themselves. *Cf. Mahmoodian*, 2011 WL 4566108, at *3 (finding under similar circumstances that "Defendants cannot argue in good faith that anyone else is to blame for their default").

### d) Prejudice to the Moving Party

"[D]elay in and of itself does not constitute prejudice to the opposing party." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 418 (4th Cir. 2010). Moreover, as plaintiffs assume the burden of proving defendants' liability, "requiring [Defendant/Counter-]Plaintiff to proceed and prove his case would not, in itself, constitute prejudice." *Mahmoodian*, 2011 WL 4566108, at *3.

While the Court recognizes the convoluted posture of not only the instant action, but also FCB's previous attempts to secure its rights under the Loan Documents, the Court cannot find that FCB will suffer undue prejudice if, in the absence of default judgment, it is forced to fully prosecute its Counterclaim against the Johnsons. Nonetheless, all of the other *Payne* factors weigh in favor of denying the Johnsons' Motion for Extension.

### e) History of Dilatory Action

As discussed above, the Johnsons have been dilatory throughout this entire action. The Johnsons have argued that their Objection to Default Judgment should be considered an answer to FCB's Counterclaim. Even were the Court to accept this argument, the Johnsons filed their Objection forty-three days after being served with FCB's Counterclaim, rendering it untimely as an answer. *See* Fed. R. Civ. P. 12(a)(1)(B). Further, the Johnsons did not file their Motion for Extension to file a late answer to FCB's Counterclaim until twenty-three days after retaining counsel and one hundred and thirty-two days after being served with FCB's Counterclaim.

Moreover, the Johnsons waited to retain counsel until two days prior to a hearing that the Court had previously scheduled. Reluctantly, the Court granted a continuance as to that hearing due to the Johnsons' counsel's pre-existing scheduling conflict. (*See* Order, ECF No. 18.) After the Court granted the continuance, the Johnsons still delayed for twenty-two days before filing their

17

Motion for Extension.  Further, the Johnsons filed their Motion for Extension mere hours before the hearing scheduled for January 7, 2015.

Plaintiffs have shown a consistent history of dilatory action; therefore, this factor weighs in favor of not setting aside an entry of default.

### f)  Less Drastic Sanctions

Here, the Johnsons have not proposed less drastic sanctions.  Under similar circumstances, the United States District Court for the Western District of Virginia has aptly discussed the consideration of less drastic sanctions:

> [Plaintiffs/Counter-]Defendants have not suggested any alternative form of sanction in place of an entry of default; rather, they have simply asked for a sanction-free extension of time to accomplish that which they have already been given many months to do. . . . Indeed, to give [Plaintiffs/Counter-]Defendants more time would be to reward them for their dilatory conduct.  What is more, an extension of time would actually serve to penalize [Defendant/Counter-]Plaintiff, who has been waiting since [August] for a responsive pleading.

*Mahmoodian*, 2011 WL 4566108, at *4.  Accordingly, the Court finds that there is no less drastic sanction than the entry of default.

Based on the foregoing analysis, the totality of the *Payne* factors weighs in favor of not setting aside the entry of default as to Plaintiffs/Counter-Defendants.  Accordingly, by analyzing Plaintiffs' Motion for Extension under the Rule 55(c) standard for setting aside an entry of default, the Court RECOMMENDS that Plaintiffs' Motion for Extension be DENIED and the Clerk be DIRECTED to enter Plaintiffs' default.

### ii.  Independent Determinations of Excusable Neglect and Entry of Default

The second route by which the Court can analyze these motions is to proceed as if default has not yet been entered due to the muddled procedural posture of the case before this Court.  This route is a two-step process.  The first step is to determine if the Johnsons' Motion for Extension should be granted.  The second step is to determine whether the entry of default is appropriate under

Rule 55(a). This Court previously adopted this process in the analogous case of *Eagle Fire, Inc.*, 2006 WL 1720681.

### a) Motion for Extension

In the first step, the Court determines if the Johnsons' Motion for Extension should be granted using the excusable neglect standard. The Supreme Court has stated that "'excusable neglect' may extend to inadvertent delays ... [but] inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" *Pioneer Inv. Serv. Co. v. Brunswick Assocs.*, 507 U.S. 380, 392 (1993) (analyzing the excusable neglect standard in relation to Fed. R. Bankr. P. 9006(b)). A district court's determination to grant an extension is ultimately "an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. The factors a court considers when determining excusable neglect include: "the danger of prejudice to the [non-movant], the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* While the Supreme Court's ruling in *Pioneer* related to Fed. R. Bankr. P. 9006(b), the Fourth Circuit has stated that these factors have "general application" beyond bankruptcy "[in] consideration of excusable neglect." *Skinner v. First Union Nat'l Bank*, 178 F.3d 1285, *2 (4th Cir. 1999) (*citing Thompson v. E.I. Dupont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996)).

In the instant case, the Johnsons make two arguments as to why their Motion for Extension should be granted. First, the Johnsons argue that their Objection should constitute an answer to FCB's Counterclaim. (Mot. for Extension ¶ 2.) As discussed above, this argument is without merit. Moreover, the Johnsons seem to contradict their own position that their Objection was a valid answer as they attempted to file a new answer, without leave of the Court, on January 8, 2014. (*See* Proffered Answer & accompanying Docket Entry 1/9/15, ECF No. 23.)

Second, the Johnsons argue that they "were in the process of trying to hire counsel, after being served with the counterclaim, which caused the undue delay in filing said answer." (Mot. for Extension, ECF No. 20 ¶ 3.) Considering the posture of this case and the length of the Johnsons' delay, the Court is not persuaded that, in the instant case, delay in retaining counsel constitutes excusable neglect. Were the Court to accept the Johnsons' argument that their Objection constituted an answer to FCB's Counterclaim, it is clear that their search for counsel could not have delayed them in filing said Objection until forty-three days after service of FCB's Counterclaim. This is not a case wherein Plaintiffs formerly proceeding *pro se* retained counsel who then filed a late answer. The Johnsons did not retain counsel prior to filing their Objection, and the Johnsons filed their Objection *pro se*. In fact, the Johnsons delayed for several months—until December 15, 2014—to retain counsel. During that period, the Johnsons made several filings in this case without the assistance of counsel. (*See* ECF Nos. 9, 10, 11, 13.) Furthermore, even after the Johnsons retained counsel, they still waited another twenty-three days to file their Motion for Extension. Lack of diligence, carelessness, laxity, and unfamiliarity with the rules "will not rise to the level of excusable neglect." *Eagle Fire, Inc.*, 2006 WL 1720681, at *4.

Ultimately, the Johnsons "must bear the responsibility of having failed to retain . . . counsel despite having been aware of this action since at least [August 28, 2014] when [FCB] served them with [the Counterclaim]." *Mahmoodian*, 2011 WL 4566108, at *6 (declining to set aside an entry of default and discussing denial of motions for extension of time.) Determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. In the instant case, the Johnsons have not shown that their failure to file a timely answer amounted to excusable neglect. Indeed, the Johnsons have not addressed the excusable neglect standard in their Memorandum in Support. Instead, Plaintiffs

appeal to the general unfairness of default judgment on FCB's Counterclaim. (*See, e.g.*, the Johnsons' Mem. Supp. ¶ 6.)

Even generously construing Plaintiffs' memorandum to argue for the Court to find Plaintiffs' failure to file an act of excusable neglect, the Court still finds none to exist. As discussed above, Plaintiffs are solely responsible for their delay in attempting to file an answer to FCB's Counterclaim. During the pendency of FCB's Counterclaim and Request for Entry of Default, Plaintiffs made several other filings and had ample opportunity to retain counsel who could have apprised them of the danger of default judgment if they did not answer FCB's Counterclaim. Nonetheless, Plaintiffs did not demonstrate any interest in addressing the merits of the Counterclaim or the allegations therein until January 7, 2015—one hundred and thirty-two days after service of FCB's Counterclaim.

Moreover, as discussed above, Plaintiffs have a demonstrated history of dilatory conduct. With these considerations in mind, it would be inequitable to find Plaintiffs delay in filing to be an act of excusable neglect. Accordingly, under the excusable neglect standard, the Court RECOMMENDS that Plaintiffs' Motion for Extension be DENIED.

### b) Entry of Default

In the second step, the Court must determine whether the entry of default is appropriate under Rule 55(a). Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).

The Court begins by noting that the rule is that the clerk *must* enter default under the aforementioned circumstances. *Id.* Presumably, in this case that did not occur due to the fact that Plaintiffs filed their Notice of Voluntary Dismissal, an action which could arguably be construed as an act of "otherwise defend[ing]" against ECF's Counterclaim. The Court, therefore, first must

determine whether Plaintiffs have failed to "plead or otherwise defend" within the meaning of Rule 55(a) to determine if the entry of default is appropriate.

The Court has noted that "[t]he pleadings referred to in Rule 55(a) are those listed in Fed. R. Civ. P. 7(a)." *Eagle Fire, Inc.*, 2006 WL 1720681, at *5 (citation omitted).[10] The defensive pleadings listed in Rule 7(a) are: answers to complaints, answers to counterclaims designated as counterclaims, answers to crossclaims, answer to third-party complaints, and replies to answers, on court order. Fed. R. Civ. P. 7(a). In the instant case, the Johnsons have failed to plead because (1) they never filed a timely answer to FCB's Counterclaim and (2) the Court recommends the denial of their Motion for Extension.

Because the Johnsons have failed to plead, the Court must next determine whether they have also failed to "otherwise defend" against FCB's Counterclaim. The Court finds that they have not. The "otherwise defend" language contemplates challenges to a counterclaim, such as motions to dismiss, filed in place of a responsive pleading. *See Eagle Fire, Inc.*, 2006 WL 1720681, at *5. That is, a party "otherwise defends" if—in a timely fashion—it has demonstrated an intent to resist the claims in the counterclaim. *See id.* at *5. If, however, a party has failed to demonstrate any intention to resist the counterclaim, that party has failed to "otherwise defend," and the entry of default is appropriate. *See id.*

In the instant case, the Johnsons have failed to "otherwise defend" against FCB's Counterclaim in a timely fashion. The only filing that the Johnsons made within twenty-one days of FCB's Counterclaim was a Notice of Voluntary Dismissal on September 12, 2014. Not only was this Notice untimely and inoperative, but it also failed to demonstrate that the Johnsons intended to defend against FCB's Counterclaim. To the contrary, if anything, the Notice demonstrated that the

---

[10] *See supra* note 8 and accompanying text.

Johnsons intended to wash their hands of this entire action rather than address the allegations in FCB's Counterclaim.

The only other action by the Johnsons that could possibly be construed as a defense against FCB's Counterclaim is their Objection to Default Judgment (ECF No. 11). Indeed, in their papers, the Johnsons have argued that their Objection should constitute an answer to FCB's Counterclaim. (Mot. for Extension ¶ 2.) At the hearing on January 7, 2015, the Johnsons made the same argument. The Johnsons' counsel argued that the Johnsons, who were formerly proceeding *pro se*, thought that their Objection would operate as an answer. As discussed at length above, the Court finds this argument to be without merit as the Objection was untimely. Moreover, rather than indicating an intent to defend against FCB's Counterclaim, the Objection merely reiterated that the Johnsons intended to end this action by taking a voluntary dismissal. (The Johnsons' Objection to Default J., ECF No. 11); *cf. Eagle Fire, Inc.*, 2006 WL 1720681, at *2-*3, *5 (finding a defendant in default although "it misunderstood the importance of filing an answer because 'it disagreed with the allegations stated in the Complaint'").

Indeed, the Johnsons did not demonstrate any actual interest in directly addressing FCB's Counterclaim or the allegations therein until twenty-three days after retaining counsel and one hundred and thirty-two days after receiving service of FCB's Counterclaim. At that time, the Johnsons filed their Motion for Extension. Even so, "a motion for extension of time cannot be deemed an assertion of a defense." *Id.* Given the above, it is abundantly clear that the Johnsons failed to mount any sort of defense against FCB's Counterclaim prior to the expiration of the twenty-one day responsive period. "Thus, the requirements of Rule 55(a) have been satisfied and it is appropriate to enter default." *Id.* at *6.

Accordingly, by denying the Motion for Extension under the excusable neglect standard and in finding that the Johnsons have failed to plead or otherwise defend, the Court RECOMMENDS that the Clerk be DIRECTED to enter the Johnsons' default as to FCB's Counterclaim.

## B. Entry of Default Judgment

As discussed above, because the Court finds that the entry of the Johnsons' default as to FCB's Counterclaim is appropriate under both the Rule 55(c) analysis and the excusable neglect and Rule 55(a) analyses, the Court now turns to determine whether the entry of default judgment is appropriate.

Following the entry of default, the Clerk must enter default judgment against a party "who has been defaulted for not appearing." Fed. R. Civ. P. 55(b)(1). If, however, the party against whom default judgment is sought has appeared, only the Court may enter default judgment. Fed. R. Civ. P. 55(b)(2). Therefore, the Court must first determine whether Plaintiffs have appeared in this case.

### i. Appearance

When a plaintiff initiates an action by filing a complaint, he has appeared before the court. 10A Charles Alan Wright et al., *Federal Practice and Procedure, Jurisdiction* § 2686 (3d ed.1998 & Supp. 2014). "This is true even when [a] plaintiff fails to take any action with regard to the subsequent filing of a cross-claim or counterclaim against him." *Id.*; *cf. Sun Bank of Ocala v. Pelican Homestead and Savings Association*, 874 F.2d 274, 276 (5th Cir. 1989) (noting that "the actual filing of a document in the record" constitutes an appearance); *Starr Consulting, Inc. v. Global Resources Corp.*, No. 1:06cv586, 2007 WL 4380101, at *3 (M.D.N.C. Dec. 11, 2007) (citations omitted) ("[C]ourts have broadly construed the word "appear.").

In the instant case, the Johnsons have made an appearance before the Court by initiating this action and filing papers. Therefore, the Court finds that entry of default judgment by the Clerk

under Rule 55(b)(1) is inappropriate. Accordingly, only the Court may enter default judgment. Therefore, the Court turns to analyzing whether default judgment under Rule 55(b)(2) is appropriate.

### ii. Rule 55(b)(2) Requirements

Under Rule 55(b)(2), the Court may enter default judgment against a non-defending party if (1) default has been entered against that party, (2) that party is neither an infant nor an incompetent person, (3) that party is not in military service, and (4) that party has received notice of the application for default judgment at least seven days before a hearing on the matter. *See* Fed. R. Civ. P. 55(b)(2); *Smith*, 2006 WL 1982762, at *1.

The record before the Court indicates that all these factors are satisfied. *See Grabert*, 8 F. Supp. 3d at 736 (citing *Ryan*, 253 F.3d at 780) (noting that a party in default concedes the facts alleged in the complaint). First, in this Report and Recommendation, the Court finds the entry of default appropriate. Second, the Johnsons are neither minors nor incompetent persons. (Taylor Aff. ¶ 5.) Third, the Johnsons are not in the military service of the United States. (Carosi Aff. ¶ 4.) Fourth the Johnsons had actual notice of FCB's Request for Default Judgment as early as October 10, 2014—the date on which the Johnsons filed their Objection to Default Judgment (ECF No. 11). Moreover, the Court twice set hearings on FCB's Motion for Default Judgment to occur more than seven days after confirming the hearing dates with the parties. (*See* Order, ECF No. 15; Order, ECF No. 18.) Therefore, the Johnsons had more than seven days notice that FCB's Request was pending. Accordingly, the Court finds that the requirements of Rule 55(b)(2) have been satisfied.

### iii. Claim for Which Relief can be Given

On deciding whether to enter default judgment against a non-defending party, a court "is required to exercise sound judicial discretion." *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009). The Court "must be satisfied that the complaint states a legitimate cause

of action" before entering default judgment. *Citibank, N.A. v. TPI Group, Inc.*, No. 1:13cv1007, 2014 WL 2579984, at *5 (E.D. Va. June 9, 2014) (citation omitted). Accordingly, the Court will apply the Rule 12(b)(6) standard to determine whether or not the complaint contains sufficient factual allegations to state a plausible claim to relief. *See id.* at *6.

In the instant case, FCB asserts a claim against the Johnsons for their default under the Note, seeking damages in the amount of $74,338.36. (FCB's Counterclaim ¶¶ 9-10.) "Under Virginia law, a breach of contract occurs if a party 'without legal excuse fails to perform an obligation in a timely manner.'" *Grabert*, 8 F. Supp. 3d at 737 (quoting Va. Code Ann. § 59.1-507.1(a)) (applying Virginia law and entering default judgment against defendants for failing to make payments as required by promissory notes).[11] Further, under the terms of the Note, the Johnsons are considered to be in default when they "fail[] to make any payment when due under th[e] Note." (Note at 2.)

Taking the facts in FCB's Counterclaim to be true, the Court finds that the Johnsons are in breach and have defaulted under the Note. *See Grabert*, 8 F. Supp. 3d at 736 ("When a defendant defaults he admits 'the plaintiff's well-pleaded allegations of fact.'" (quoting *Ryan*, 253 F.3d at 780)). Specifically, the Johnsons have defaulted for their failure to make timely payments to FCB, as required by the Note. (FCB's Counterclaim ¶¶ 6, 8-9.)

The Note is a promissory note that evidences the Loan, which is a commercial loan. (FCB's Counterclaim ¶ 7.) FCB, as the lender and the owner and holder of the Note, is entitled to receive payments under the Note. (FCB's Counterclaim ¶ 6;Note at 2; CIT Agreement at 6 (indicating that FCB, operating by that name, is the lender).) Under the terms of the Note, signed by the Johnsons, the Johnsons are required to make monthly payments to FCB until the balance is paid. (Note at 2, 4; CIT Agreement at 6.) Under the terms of the Note, as modified by the CIT Agreement, the Johnsons agreed to a 6.00% fixed interest rate. (CIT Agreement at 6.)

---

[11] In the instant case, the terms of the Note indicate that it is governed by the laws of the Commonwealth of Virginia. (Note at 3.)

The Johnsons stopped making payments on the Note in July 2013. (Notice of Default at 8.) On November 25, 2013, FCB notified the Johnsons of their default and presented the Johnsons with the opportunity to cure their default. (*Id.* at 8-9; FCB's Counterclaim ¶ 8.) Specifically, FCB demanded that the Johnsons cure their default by December 13, 2013. (Notice of Default at 8.) The Johnsons failed to comply with the demand; therefore, FCB exercised its rights under the Note and accelerated the amount due under the Note. (FCB's Counterclaim ¶ 8, Note at 3.)

For their failure to comply with their obligation under the Note to pay FCB, the Johnsons are in default under the terms of the Note, and FCB is entitled to exercise its contractual rights against the Johnsons. The Court, therefore, turns to determining whether FCB's Counterclaim sufficiently states a claim for the specific damages requested.

a) **Damages**

FCB's Counterclaim makes a demand for damages in the aggregate amount of $74,338.36. (FCB's Counterclaim ¶ 10.) FCB reaffirmed its claim to these damages in an affidavit attached to its Request for Entry of Default Judgment (Aff. of Shane P. Carosi, ("Carosi Aff."), ECF No. 8-1 ¶ 3.) Having held a hearing and examined the papers, and taking the factual allegations in FCB's Counterclaim as conceded, *see, e.g., Grabert*, 8 F. Supp. 3d at 736 (citing *Ryan*, 253 F.3d at 780), the Court finds that FCB is entitled to damages in the full amount demanded.

Mr. Carosi has stated that the following amounts were due under the Note as of August 13, 2014:

- Principal balance:                 $ 60,903.35
- Interest as of 8/13/14:         $ 2,842.16
- Late fees:                          $ 156.43
- Delinquent real estate taxes:    $ 888.02
- Water/sewer lien:              $ 397.32
- Collection costs and attorneys' fees: $ 9,151.08

(Carosi Aff. ¶ 3.) Moreover, Mr. Carosi has stated that interest continues to accrue at an annual rate of 6.00%. (*Id.*)

Upon the Johnsons' default, the Note entitles FCB to immediately recover "all accrued interest, together with all other applicable fees, costs and charges," including a late charge. (Note at 2-3.) Therefore, the Court finds that FCB is entitled to recover the principal balance; interest as of August 13, 2014; and, the late fees. Furthermore, FCB is entitled to collect the interest on the principal balance which continues to accrue at 6.00% annually.

The DOT as Modified requires the Johnsons to pay when due "all taxes . . . [and] charges (including sewer and water)" associated with the Property. (*See* DOT as Modified ("Taxes and Liens" Section, "Payment" Subsection).)[12] If the Johnsons failed to make those payments, FCB had the authority to make the payments and collect from the Johnsons any sums it paid. (*Id.* ("Expenditures by Lender" Section).) Accordingly, the Court finds that FCB is entitled to recover payments for the delinquent real estate taxes and the water/sewer lien.

Under the Note, the Johnsons also agreed to "pay [FCB's] attorneys' fees equal to 25.000% of the principal balance due on the loan and all of lenders other collection expenses." (Note at 3.) FCB, therefore, has a contractual right to recover collection costs and attorneys' fees under the Note. "In Virginia, a provision in the body of a note to pay an attorney's fee in event the note is collected by an attorney has been held to be a valid and binding obligation." *Richardson v. Breeding*, 187 S.E 454, 455 (Va. 1936). Federal courts in Virginia have similarly upheld the award of *contractual* attorneys' fees, without requiring an independent reasonableness analysis. *See Nationsbank of Virginia, N.A. v. Jordache Venture Assocs.*, No. 2:92494, 1993 WL 724806, at *3 (E.D. Va. Aug. 4, 1993) (awarding *contractual* fees without a reasonableness analysis); *see also In re William E.K. Hathaway, II*, 364 B.R. 220, 248-50 (Bankr. E.D. Va. 2007) (distinguishing

---

[12] *See supra* note 4.

28

*statutory* fee provisions under federal law and finding that under Virginia law *contractual* attorneys'

fees provisions do not require an independent reasonableness analysis.). *But see, Grabert*, 8 F.

Supp. 3d at 737 (conducting a reasonableness inquiry into the reward of *contractual* attorneys' fees

(citing *Kennedy v. A Touch of Patience Shared Housing, Inc.*, 779 F. Supp. 2d 516, 525 (E.D. Va.

2011) (conducting a reasonableness inquiry into the award of *statutory* attorneys' fees))).[13]

     Moreover, in Virginia, a provision for contractual attorneys' fees is deemed reasonable on

its face, unless the opposing party proves unreasonableness. *Parksley Nat. Bank v. Accomack

Banking Co.*, 186 S.E. 38, 39 (Va. 1936); *see also In re Hathaway*, 364 B.R. at 249 (collecting

Virginia cases). As the Johnsons are in procedural default for failing to defend against FCB's

Counterclaim, the allegations therein are deemed admitted and uncontested. *See Grabert*, 8 F.

Supp. 3d at 736 (citing *Ryan*, 253 F.3d at 780). Therefore, the Court finds that FCB is entitled to

collect attorneys' fees in the contractual amount of up to "25.000% of the principal balance due on

the loan." (Note at 3); *see In re Hathaway*, 364 B.R. at 250 (awarding contractual attorneys' fees in

the amount of 25% of the balance of a note, without a reasonableness analysis).

     Furthermore, the Court finds that Virginia law does not require a reduction in the contractual

attorneys' fees on the basis of unreasonableness. *See In re Hathaway*, 364 B.R. at 250. The Court

notes that the FCB's requested fee amount, $9,151.08, is significantly less than 25% of the principal

balance currently due on the Note. Indeed, FCB's request is closer to 15% of the balance due.

Moreover, "[b]ecause the attorney fees are being awarded on the basis of contractual law and not as

an application for compensation before this Court under [federal law], this Court concludes that

further evidence as to the reasonableness of the amount of the attorney fees is not needed." *Id.*

---

[13] The Court finds the attorneys' fees analysis in *Kennedy* to be distinguishable as the prevailing party therein sought reasonable *statutory* fees under federal law, rather than *contractual* fees—which would be governed by the law of the contract, here, Virginia law.

Accordingly, the Court finds that FCB is entitled to recover the full amount of collection costs and attorneys' fees demanded—$9,151.08.

## IV. CONCLUSION

Based on the foregoing analysis, the Court RECOMMENDS that Plaintiffs/Counter-Defendant the Johnsons' Motion for Extension of Time to File Pleadings *Nunc Pro Tunc* (ECF No. 20) be DENIED, that Defendant/Counter-Plaintiff FCB's Request for Clerk's Entry of Default Judgment (ECF No. 8) be GRANTED, that the Clerk be DIRECTED to enter Plaintiffs/Counter-Defendants the Johnsons' DEFAULT as to FCB's Counterclaim (ECF No. 3), and that FINAL JUDGMENT on FCB's Counterclaim (ECF No. 3) be entered in favor of Defendant/Counter-Plaintiff FCB and against Plaintiffs/Counter-Defendants the Johnsons in the following amounts:

- **Principal Balance:** Sixty Thousand, Nine Hundred and Three dollars and Thirty-Five cents ($60,903.35) plus interest calculated at an annual six percent (6.00%) rate from August 13, 2014 until full payment of the principal balance is made;
- **Interest as of August 13, 2014:** Two Thousand, Eight Hundred and Forty-Two dollars and Sixteen cents ($2,842.16);
- **Late Fees:** One Hundred and Fifty-Six dollars and Forty-Three cents ($156.43);
- **Delinquent Real Estate Taxes:** Eight Hundred and Eighty-Eight dollars and two cents ($888.02);
- **Water/Sewer Lien:** Three Hundred and Ninety-Seven dollars and Thirty-Two cents ($397.32); and,
- **Collection Costs and Attorneys' Fees:** Nine Thousand, One Hundred and Fifty-One dollars and Eight cents ($9,151.08).

The Clerk is directed to file this Report and Recommendation electronically and send a copy to all counsel of record and to Robert E. Payne, Senior United States District Court Judge.

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

_____ /s/ 
Roderick C. Young
United States Magistrate Judge

Richmond, Virginia
Date: February 19, 2015

31